1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT KELLEY, et al.,

                Plaintiff,

   v.

JAMES KAHAN, et al.,

                Defendants.

Case No.  C05-115L

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
DISMISSING ALL FEDERAL CLAIMS

17
18
19
20
21
22
23
24
25
26

## I.  Introduction

     This matter comes before the Court on the "Summary Judgment Motion of Defendants Ponamarchuk, Thorpe, and Eadie" (Dkt. # 40).  Plaintiff Robert Kelley is suing defendants James Kahan, his wife, Leonid Ponomarchuk, Sloan Ponomarchuk, Judge Richard Thorpe, Judge Richard Eadie, several unknown clerks in the King Count Superior Court system, Martha Wackenshaw and her husband.  Kelley claims that these individuals conspired to deprive him of his civil rights under 42 U.S.C. §§ 1983 and 1985.  Defendants now move for summary judgment based on the <u>Rooker-Feldman</u> doctrine, res judicata, judicial immunity, and failure to state a claim.  Fed. R. Civ. P. 12(b)(6).

27
28

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT - 1

## II.  Background Facts

The facts underlying the family dispute that gave rise to this action have been set forth in a state court opinion.  Kelley v. Ponamarchuk, 109 Wn.App. 1008 (2001) (unpublished) (Kelley I).  The specific procedural background relevant to plaintiff's claims in this action also have been described in a state court opinion.  Ponamarchuk v. Kelley, 119 Wn.App. 1041 (2003) (unpublished) (Kelley II).  In his federal action, Kelley contends that the procedures and substantive outcomes in his state action were manifestations of a conspiracy to deprive him of his civil rights.  Complaint ¶¶ 41, 42.

The facts of the complaint are almost exactly the same as those described in Kelley II.  The court explained in Kelley II that the court in Kelley I had "affirmed the entry of a domestic violence protection order that precluded Kelley from contacting [his daughter] Katelin, and imposed conditions on Kelley such as requiring Kelley to engage in parenting classes and to undergo a psychological evaluation."  119 Wn.App. at *1.  That order, which was set to expire on January 19, 2002, was temporarily extended by King County Superior Court Judge Barnett pursuant to a petition of Sloan Ponomarchuk.  On February 1, 2002, King County Superior Court Presiding Judge Eadie transferred the request for a new protection order and a request to modify the parenting plan to Superior Court Judge Thorpe in neighboring Snohomish County, to be heard March 8, 2005, and extended the temporary extension of the protection order until such date.

Judge Eadie transferred the two pending issues to Judge Thorpe in Snohomish County because of a concern for the perception of bias based on the fact that Sloan Ponomarchuk's husband, Leonid Ponomarchuk, is a King County Superior Court Commissioner.  In fact, the original action had been heard by Judge Thorpe with the consent of the parties.  Kelley I, 109 Wn.App. at *2, Kelley II, 119 Wn.App. at *1.  The date of the hearing for the two outstanding issues transferred by Judge Eadie was subsequently switched to March 5, 2005 to accommodate

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT - 2

Judge Thorpe's calendar.

On March 4, 2005, Kelley submitted a pleading entitled "Notice of Special Appearance" in which he acknowledged the March 5 hearing date and raised a number of defenses, "including failure to state a claim upon which relief can be granted, lack of standing, improper venue, defective service of process, waiver, laches, and estoppel." Id. at *2, *4. Kelley then failed to appear at the hearing on March 5 and the court entered four orders: "an order of protection for Katelin, an order of protection for [Sloan] Ponomarchuk and her husband, a temporary parenting plan, and an order regarding adequate cause setting the modification action for trial." Id. at *2. The trial was subsequently held on December 23, 2002, and Kelley again did not appear. That court granted the petition for modification of the parenting plan. In Kelley II, the Court of Appeals heard Kelley's appeal of the protection order entered at the March 5 hearing and the modification of the parenting plan from the December 23 trial.

Kelley's factual allegations in the instant case are largely the same as those from Kelley II except that he ends his description of the facts upon the entry by Judge Thorpe of the protection order after the March 5 hearing, and alleges that conspiratorial machinations underlie each action in his state court proceedings. For example, Kelley alleges that for some reason, Ponomarchuk's attorney, James Kahan, persuaded two clerks in the King County Superior Court to "misplace" Kelley's March 4 Notice of Special Appearance so it would not be logged into the court's electronic filing system (SCOMIS) until after the March 5 hearing. Next, Kelley alleges that Kahan explained this maneuver to Judge Thorpe and further noted that "arrangements had already been made to provide 'plausible deniability' to [Thorpe]." Complaint ¶ 26. According to Kelley, the two then agreed to hold the hearing in the absence of a court reporter to increase the secrecy of their endeavor. The overall goal of the conspiracy was to cut off contact between Kelley and his daughter so that his daughter would be unable to reveal to him scandalous information that would undermine the King County judicial system.

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT - 3

1    Defendants contend (1) that Kelley's suit is barred by the <u>Rooker-Feldman</u> doctrine, (2)

2    that many, if not all, of the legal questions raised have already been resolved, (3) that judicial

3    immunity bars the suit against the defendants who are judges, and (4) that Kelley has failed to

4    state a claim upon which relief can be granted.  Kelley responds that because he challenged the

5    jurisdiction of the tribunal that issued the protective order, none of these defenses has merit.[1]

### III.  Discussion

6

**A.    Subject Matter Jurisdiction**

7

8    Although defendants describe their motion as a motion for summary judgment, motions

9    under <u>Rooker-Feldman</u> are properly considered motions to dismiss for lack of jurisdiction over

10   the subject matter.  Fed. R. Civ. P. 12(b)(1).  A motion for summary judgment requires a

11   decision on the merits of the action, whereas a motion to dismiss for lack of jurisdiction over the

12   subject matter argues that the court cannot hear the action at all.  <u>See</u> <u>Goodman ex rel. Goodman</u>

13   <u>v. Sipos</u>, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001).  Where the defendants assert a fact-based

14   challenge to the Court's subject matter jurisdiction, the Court is not limited to consideration of

15   the pleadings.  <u>Id</u>.

**B.    Analysis**

16

17   Under <u>Rooker-Feldman</u>, this Court lacks jurisdiction to hear an action the resolution of

18   which would require the de facto reversal of a state court decision.  <u>Noel v. Hall</u>, 341 F.3d 1148,

19   1155 (9th Cir. 2003).  This principle that federal courts other than the Supreme Court lack

20   jurisdiction to hear appeals from state court decisions was first set forth in <u>Rooker v. Fidelity</u>

21   <u>Trust Co.</u>, 263 U.S. 413 (1923).  In <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), the

22   Supreme Court explained further that "[i]f the constitutional claims presented to a United States

23

24   [1] Kelley also requests that the Court take notice of the practice of holding *pro se*
25   complainants to less stringent standards than licensed attorneys.  <u>Haines v. Kerner</u>, 404 U.S.
     519, 520 (1972)  It is noted, and the Court would add that Kelley demonstrates an impressive
26   grasp of the challenging legal concepts integral to his legal posture.

27   ORDER ON DEFENDANTS'
     MOTION FOR SUMMARY
28   JUDGMENT - 4

District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application [for relief], then the District Court is in essence being called upon to review the state court decision.  This the District Court may not do."  Id. at 483.

The District of New Jersey resolved a similar dispute in Hawkins v. Supreme Court of New Jersey, 2005 WL 2133588 (D.N.J. Aug. 31, 2005).  In that case, plaintiff Eldridge Hawkins brought an action against several judges in the New Jersey state court system after he received unsatisfactory outcomes in their courts.   The crux of his federal claims was that these adverse judgments were the result of an unconstitutionally discriminatory legal system.  The court held that it lacked subject matter jurisdiction pursuant to Rooker-Feldman:

> Rooker-Feldman not only bars a district court from overturning a state court judgment; but also bars it from hearing a claim that would require the Court to 'determine that the state court judgment was erroneously entered or [to] take action that would render that judgment ineffectual.'  As one district court has explained, "[i]f it were otherwise, any person dissatisfied with a state . . . award could seek review in the district court under the guise of a federal civil rights violation."

Id. at *8 (citations omitted).

Similarly, in Bianchi v. Rylaarsdam, the Ninth Circuit affirmed the district court's conclusion that it lacked subject matter jurisdiction in a matter where the court determined that "to entertain his challenge and grant relief would necessarily require us to review and invalidate the state court decision."  334 F.3d 895, 896 (9th Cir. 2003).  In Bianchi, plaintiff originally unsuccessfully sued Bank of America in a jury trial, presided over by Judge Fenton of the Superior Court of California.  Plaintiff filed a number of post-trial motions at the trial court, for which Judge Fenton recused himself.  The case was transferred to Judge Rylaarsdam, who was then removed on the basis of a statutory "peremptory" challenge by the plaintiff.  After the motions were resolved unfavorably to the plaintiff, plaintiff appealed to the California Court of Appeal.  Judge Rylaarsdam had been elevated in the meantime and was a member of the appellate panel which affirmed the district court's decisions.  After a number of other appeals and legal maneuvers, plaintiff filed suit in federal court against the three members of the

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT - 5

1   appellate panel, arguing that his due process rights were violated by Judge Rylaarsdam's

2   presence on the panel.  The action was appealed the Ninth Circuit, which concluded that the

3   federal action was "the functional equivalent of an appeal of the state court decision," and

4   affirmed the district court's dismissal pursuant to Rooker-Feldman.  Id. at 896.

5       Kelley attempts to distinguish this precedent by arguing that in those cases, the plaintiffs'

6   federal claims challenged proceedings where the state court actually had jurisdiction to hear the

7   prior action.  Kelley argues that his action better resembles the factual background of Stump v.

8   Sparkman, 552 F.2d 172 (7th Cir. 1977), in which the Seventh Circuit held that a state court

9   judge's action "had no basis either in law or in equity and was therefore taken without

10  jurisdiction," and therefore that the state court judge lacked judicial immunity.  In Stump, a

11  woman sued the state court judge who several years earlier had authorized her unwitting

12  sterilization at her mother's behest.  Although Rooker is not mentioned (Feldman was not yet

13  decided)—perhaps because the state court's action was "irreversible" and therefore plaintiff

14  sought only damages—the Seventh Circuit clearly permitted a plaintiff who had been aggrieved

15  by the state court to pursue a claim against that judge in federal court.  Stump ultimately was

16  reversed by the Supreme Court.  435 U.S. 349 (1978).  In that opinion, the Court confirmed the

17  Seventh Circuit's conclusion that in certain situations, a judge acts without jurisdiction and

18  therefore can be found liable for monetary damages, but held that this was not one of those

19  situations.  Id. at 356–57.

20      Kelley's invocation of Stump ignores defendants' challenge to this Court's subject matter

21  jurisdiction.  Before this Court can assess whether defendant judges are entitled to immunity, the

22  Court must assess whether it has jurisdiction to hear Kelley's claims.  The jurisdictional analysis

23  requires an assessment of the federal charges and the proceedings below.  Significantly, a review

24  of the previous proceedings reveals that Kelley already had an opportunity to air his concerns

25  about whether the state court had jurisdiction to hear his dispute.

26

27  ORDER ON DEFENDANTS'
    MOTION FOR SUMMARY
28  JUDGMENT - 6

The relevant <u>Rooker-Feldman</u> precedent establishes clearly that this Court lacks subject matter jurisdiction to hear Kelley's federal claims.  Most importantly, a federal court may not hear an action when "the injury of which [plaintiff] complains was caused by the judgment, just as in <u>Rooker</u> [and] <u>Feldman</u>."  <u>GASH Assocs. v. Rosemont</u>, 995 F.2d 726, 729 (7th Cir. 1993).  In the instant case, Kelley complains of a conspiracy that deprived him of his ability to interact with his daughter and, perhaps, of his due process rights.[2]  The same harm that he identifies as the outcome of the conspiracy is that which was the result of the state court proceedings.  <u>See</u> <u>id</u>. at 729 ("[Plaintiff] did not suffer an injury out of court and then fail to get relief from state court; its injury came from the judgment . . . .").  Kelley cannot seek a remedy in federal court for a harm imposed by a state court decision.

It is irrelevant that Kelley does not specifically seek reversal of the state court's decision, but rather only asks "for any and all damages allowed by law in an amount to be proved at trial" and "[f]or such other relief as the Court may deem to be just, proper, and equitable."  Complaint ¶¶ 53, 58.  This distinction lacks salience because in order to establish the predicate injury to his claim, "the plaintiff would have to show that the violation of such an independent right caused an erroneous adverse decision to be made and this is precluded by the <u>Rooker-Feldman</u> doctrine."  <u>Shepherdson v. Nigro</u>, 5 F.Supp.2d 305, 308 (E.D.Pa. 1998).  In that case, plaintiff sued a state court judge under 42 U.S.C. § 1983 for depriving her of her right to an unbiased judge.  Because plaintiff could "not show[] the deprivation of such an independent constitutional right or a compensable injury," <u>Rooker-Feldman</u> barred the collateral attack of the state court judgment.  <u>Id</u>. at 308.

---

[2] Kelley does not describe exactly how the facts violate the Constitution.  Rather, he claims that the "acts and omission stated [in the complaint] constitutes a claim against each and all Defendants of *conspiracy to violate civil rights, including deprivation of constitutional rights under color of law under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. constitution . . . .*"  Complaint ¶ 41 (emphasis in original).

1    Moreover, the jurisdictional defects alleged by Kelley have been reviewed in the state

2  court.  Kelley II, 119 Wn.App. at *3–*4.  In that opinion, the Court examined the jurisdiction of

3  Judge Thorpe in Snohomish County and determined that while the transfer was irregular,

4  because normally Judge Thorpe should have presided as a visiting judge in King County, Kelley

5  was not prejudiced by the case having been heard in Snohomish County.  Next, the Court of

6  Appeals determined that the proceeding was not without jurisdiction due to improper service,

7  because it was "clear that Kelley was actually served."  Id. at *4.  Finally, that court concluded

8  that the court that modified the parenting plan after the December 23, 2002 hearing had the

9  authority to do so because Kelley had submitted a "notice of special appearance."  Id. at *5.

10    Kelley's claims of conspiracy renew not only the jurisdictional issues that were already

11  decided, but would require a reversal of the entire decision rendered by the Washington Court of

12  Appeals in Kelley II.  Although that court did not explicitly address the issue of whether all the

13  previous decisions were part of an overall conspiracy to deprive Kelley of his civil rights, it

14  addressed on their merits the decisions that Kelley claims arose from the conspiracy and

15  concluded that none was error.  This Court therefore lacks subject matter jurisdiction pursuant to

16  the Rooker-Feldman doctrine to hear Kelley's federal claims.

17  **C.    State Law Claims**

18    Because plaintiff's action lacks any supportable federal claim, this Court cannot exercise

19  supplemental jurisdiction over his related state claims.  See United Mine Workers v. Gibbs, 383

20  U.S. 715, 728 (1966).

21                              **IV.  Conclusion**

22    For the foregoing reasons, IT IS HEREBY ORDERED that defendants' motion to dismiss

23  is GRANTED, and plaintiff's federal claims as to all defendants are DISMISSED WITH

24  PREJUDICE for lack of subject matter jurisdiction under the Rooker-Feldman doctrine.

25  Plaintiff's state claims as to all defendants are DISMISSED WITHOUT PREJUDICE for lack of

26

27

28

1    supplemental jurisdiction.

2        DATED this 21st day of April, 2006.

3

4

5                                                    Robert S. Lasnik
                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    ORDER ON DEFENDANTS'
      MOTION FOR SUMMARY
28    JUDGMENT - 9